IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORTH SUBURBAN CHIROPRACTIC CLINIC, LTD., individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 13 C 3113 |
| v. | ) ) | Judge Amy J. St. Eve |
| MERCK & CO., INC., a Delaware Corporation, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

The Court denies Defendant's motion to dismiss [19] brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 26(a)(1) disclosures shall be exchanged by 10/4/13. Written discovery shall be issued by 10/11/13. Status hearing remains set for 10/29/13 at 8:30 a.m.

## STATEMENT

On June 13, 2013, Plaintiff North Suburban Chiropractic Clinic, Ltd. filed the present First Amended Class Action Complaint against Defendant Merck & Co., Inc. alleging that Defendant or its agents sent unsolicited mass junk faxes or fax blasts to unwilling recipients in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Protection Act of 2005. *See* 47 U.S.C. § 227(b)(1)(C). Before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Defendant's motion.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be

enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011). In ruling on a Rule 12(b)(6) motion, district courts may also consider documents attached to the pleadings without converting the motion into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the claims. *See Geinosky v. City of Chicago,* 675 F.3d 743, 745 n. 1 (7th Cir.2012); *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 556 (7th Cir. 2012); Fed.R.Civ.P. 10(c).

## BACKGROUND

Defendant is a corporation that develops, manufactures, and distributes prescription drugs and other health products and services. (R. 1, Compl. ¶ 8.) Plaintiff is a corporation bringing this action on behalf of itself and others similarly situated. Reviewing documents attached to Plaintiff's First Amended Class Action Complaint and Plaintiff's allegations, Plaintiff asserts that on or about January 8, 2013, Plaintiff received an unsolicited fax sent by or on behalf of Defendant. (Compl. ¶¶ 9, 14.) The fax invited recipients to "a medical education program for health care professionals only" in the form of a live interactive webcast sponsored by Defendant, with the speaker presenting on Defendant's behalf. (Compl., Ex. A.) The fax included a list of topics related to "health literacy," which would be the focus of the webcast, none of which on their face involved products or services commercially available from Defendant. (*Id.*) The fax did, however, display Defendant's corporate name and logo. (*Id.*)

In order to attend the webcast, recipients were required to register for the event by visiting a URL listed on the fax, which led to a registration page on Defendant's website. (*Id.*) Registration entailed providing contact information, including an e-mail address. (Compl., Ex. B.) The registration website stated, and the Plaintiff alleges, that by registering for the webcast, registrants "agree[d] that the Merck & Co., Inc. family of companies . . . may contact [them] via e-mail regarding product information, site enhancements, special offers, educational opportunities, additional resources, programs, and information about Merck." (*Id.*; Compl. ¶ 12.) The registration website further provided a telephone number registrants could call to request that Merck not contact them in the future. (Compl., Ex. B.) Near the bottom of the registration website, the page featured a checkable box, asking "May we send information about Merck products to you via e-mail?" (*Id.*) Plaintiff further alleges that Defendant's "fax advertisements did not display a proper opt out notice" as is required by law. (Compl. ¶ 18.) Plaintiff also alleges that Defendant "uses the fax advertisements and the seminars as part of its work or operations to market is goods and services." (*Id.* ¶ 13.) Finally, Plaintiff alleges that the fax sent

by Defendant constituted "an unsolicited advertisement to a telephone facsimile machine, in violation of the TCPA." (*Id.* ¶ 28.)

## **ANALYSIS**

Under the TCPA, it is unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C). Plaintiff alleges that Defendant's fax violated this section of the TCPA by sending unsolicited fax advertisements. Defendant contends that the fax at issue was not an unsolicited advertisement, and therefore, did not violate the TCPA. Because Defendant has not raised any of the enumerated exceptions to the TCPA, 47 U.S.C. § 227(b)(1)(C)(i)-(iii), the Court turns to whether the Defendant's fax falls within the TCPA's definition of an unsolicited advertisement.

The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). "Congress has not spoken directly on the issue of whether an advertisement for free services can be unsolicited advertisements under the TCPA." *GM Sign, Inc. v. MFG.com, Inc.*, No. 08 C 7106, 2009 WL 1137751, at *2 (N.D. Ill. Apr. 24, 2009). Thus, courts within this district have accepted the Federal Communications Commission's construction of the statute, which provides that faxes "that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition." *Id.* (quoting *In re Rules and Reg. Implementing the Tel. Consumer Prot. Act of 1991 and the Junk Fax Prevention Act of 2005*, 21 F.C.C.R. 3787, 3814 (Apr. 6, 2006)).

Courts within this district have also recognized that "[f]axes promoting a free seminar may constitute an 'unsolicited advertisement' since free seminars are often a pretext to market products or services." *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 12 C 4978, 2012 WL 4120506, at *2 (N.D. Ill. Sept. 18, 2012). More specifically, certain courts have concluded that faxes promoting free seminars are unsolicited advertisements in violation of the TCPA where "the complaint alleges that the seminar is a part of [the defendant's] work or operations to market [its] goods or services." *Id.* Where a fax is deemed commercial, "[t]he fact that the fax was sent only to . . . qualified individuals does not change its commercial nature." *Sadowski v. OCO Biomedical, Inc.*, No. 08 C 3225, 2008 WL 5082992, at *2 (N.D. Ill. Nov. 25, 2008). On the other hand, where the fax at issue advertises a free seminar for which participants must be pre-screened and the complaint fails to allege that the seminar was a pretext to an advertisement, courts have found the fax does not violate the TCPA. *See, e.g., Phillips Randolph Enters., LLC. v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 852-53 (N.D. Ill. 2007).

In support of its motion to dismiss, Defendant cites *Phillips Randolph*. In that case, the district court granted a defendant's motion to dismiss plaintiff's TCPA claim where the fax at issue promoted an invitation to participate in "a research discussion on the topic of a new

HEALTHCARE PROGRAM sponsored by The Chicagoland Chamber of Commerce" and instructed interested recipients to "call to see if you qualify." In granting the motion, the *Phillips Randolph* court placed emphasis on the fact that the defendant had not alleged "that the fax was a pretext to an advertisement" and that fax recipients had to be "pre-screened" before participating in the program. *Id.* at 853. In the instant case, however, unlike *Phillips Randolph*, Plaintiff alleges that the fax was a pretext to an advertisement and that the Defendant utilized the webcast to advertise its products or services. (Compl. ¶ 13) ("Merck uses the fax advertisements and the seminars as part of its work or operations to market its goods and services.") Also, unlike *Phillips Randolph*, Defendant's fax does not require that interested recipients be qualified and pre-screened. Here, the only restriction on eligible participants is the statement that the webcast is "for health care professionals only." (Compl., Ex. A.) The fact that Defendant's fax was directed only to health care professionals does not affect its commercial nature one way or another. *See Sadowski*, 2008 WL 5082992, at *2.

The present case is factually akin to the district court decision in *Physicians Healthsource, Inc. v. Alma Lasers, Inc.* In that case, the defendant sent faxes "to promote a free seminar on medical aesthetics." 2012 WL 4120506, at *1. The plaintiff in *Alma* contended that the faxes violated the TCPA because the defendant "intended to market its products and services at the seminar." *Id.* On its face, the fax listed general safety and treatment techniques as the topics to be discussed at the seminar, as well as the opportunity for participants to observe patient treatments and participate in a lab and a workshop. *See id.* (listing "laser physics, safety, treatment parameters, techniques, and the latest in laser technology" as seminar topics). The fax recipients were directed to "register by contacting Alma via its website, phone number, or fax number" and provided "phone and fax numbers for those wishing to be removed from Alma's fax distribution list." *Id.* The defendant argued that the fax was outside the TCPA because the fax did not "promote products or services for commercial purposes" and therefore filed a motion to dismiss. *Id.* at *2.

The *Alma* court denied the defendant's motion to dismiss, finding that

> [w]hile the fax does not indicate an intent to market products or services, the complaint alleges that the seminar is a part of Alma's 'work or operations to market [Alma]'s goods or services.' Accepting PHI's well-pleaded allegations as true and drawing all inferences in PHI's favor, it is plausible that Alma promoted its products and services by holding a free seminar. That is enough to state a claim under the TCPA."

*Id.* at *2. The court in *Alma* distinguished other cases cited by the plaintiff on the basis that the plaintiff alleged "that Alma used free seminars like the one advertised here to market its goods." *Id.*

This Court agrees with the decision in *Alma*. As in *Alma* ─ unlike *Phillips Randolph* ─ while the free seminar topics listed on the fax do not mention explicitly any of Defendant's commercially available products or services or express an intent by Defendant to market its products or services, Plaintiff alleges that Defendant "uses the fax advertisements and the seminars as part of its work or operations to market its goods and services." (Compl. ¶ 13.) Additionally, as in *Alma*, here, the recipients are directed to Defendant's corporate website to register for the seminar. The fax in this case entails a step even further than *Alma* because registration for Defendant's seminar requires the recipient to "agree that the Merck & Co., Inc. family of companies . . . may contact [them] via e-mail regarding product information, site enhancements, special offers, educational opportunities, additional resources, programs, and information about Merck." (Compl., Ex. B.) Therefore, accepting Plaintiff's well-pleaded allegations as true and drawing all inferences in Plaintiff's favor, it is plausible to conclude that Defendant's fax may have been a pretext to market its goods and services, which is sufficient to state a claim under the TCPA. *See Iqbal,* 556 U.S. at 678 (complaint plausible on its face when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Thus, the Court denies Defendant's motion to dismiss.

Date: September 13, 2013        _____
                                                                     AMY J. ST EVE
                                                                     United States District Court Judge